United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN NAULTY and CAROL NAULTY,<br><br>  Plaintiffs,<br><br>  v.<br><br>GREENPOINT MORTGAGE FUNDING,<br>INC., et al.,<br><br>  Defendants.<br>_____/ | Nos. C 09-1542 MHP, C 09-1545 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Defendants' Motions to Dismiss;<br>Plaintiffs' Motions for a Preliminary<br>Injunction or Temporary Restraining Order** |

Plaintiffs John and Carol Naulty allege that Wachovia Mortgage FSB ("Wachovia"), GreenPoint Mortgage Funding, Inc. ("GreenPoint"), American Capital Financial Services ("American Capital"), James Naulty, GMAC Mortgage LLC ("GMAC"), and Mortgage Electronic Registration Systems, Inc., (collectively "defendants") engaged in a predatory mortgage lending scheme which defrauded plaintiffs. Specifically, plaintiffs allege that defendants variously failed to provide certain disclosures regarding the terms of plaintiffs' loans, misled plaintiffs in regard to plaintiffs' ability to pay the monthly amounts due on the loans, misstated plaintiffs' income on the loan documents, and failed to inform plaintiffs of defendants' intent to securitize the loans. Plaintiffs advance a variety of federal and state claims: violations of federal lending laws, violation of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act; negligence/negligence per se; breach of contract; breach of fiduciary duty; intentional infliction of emotional distress; statutory and common law fraud; violations of state lending laws; violations of state deceptive advertising and unfair business practices laws; quiet title; and accounting. They also seek a

preliminary injunction or temporary restraining order (TRO) to prevent foreclosure and eviction from their home, arguing that no defendant is the holder of the promissory note. Now before the court are defendants GreenPoint, Wachovia and GMAC's motions to dismiss and plaintiffs' motion for preliminary injunctive relief. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

I.   The Parties

Plaintiffs John and Carol Naulty are husband and wife. They are, and were at all times relevant to this action, citizens of the State of California and residents of Contra Costa County, California. Complaint ¶ 1. Defendants are financial institutions that were involved in the provision of loans to the Naultys. Defendant GreenPoint is organized under the laws of the State of California and has its principal place of business in Novato, California. Id. ¶ 3. Plaintiffs also allege that several other defendants are organized under the laws of the State of California or have principal places of business in California. Id. ¶¶ 4-7. Defendant removed this case to federal court on the basis of federal question jurisdiction. Docket No. 1 (Notice of Removal) ¶ 5.

II.  Plaintiffs' Loans

Plaintiffs' primary residence is located at 315 Wildberry Lane, Brentwood, California (hereinafter, "the trust property"). Plaintiffs had initially acquired the trust property through a loan with PCFS Mortgage Resources, which they consummated in May 2003. Plaintiffs allege they were in a financial position to maintain this loan in both the short and long terms. Complaint ¶¶ 56-57. In or about October 2004, plaintiffs were approached by defendant Wachovia's predecessor-in-interest[1] and defendant American Capital, through defendant Naulty, for a purchase money mortgage loan to refinance the trust property. Id. ¶ 62. At the urging of defendants American Capital and Naulty, plaintiffs twice refinanced their home with Wachovia's predecessor-in-interest. In October 2004, plaintiffs borrowed $314,000, and in June 2005, plaintiffs borrowed $371,000. These loans were

2

secured by deeds of trust. Id. ¶ 63-65. Subsequently, plaintiffs' interest rate adjusted repeatedly. Id. ¶ 66.

In April 2006, defendant American Capital proposed that plaintiffs take out another loan, to refinance the June 2005 loan. This new loan, also to be secured by the trust property, was to be funded by GreenPoint. The parties consummated the loan, for $416,000, in April 2006. Defendant GreenPoint purported to assign the loan to defendant GMAC without providing notice to plaintiffs. Id. ¶¶ 67-69. By April 2008, plaintiffs had payments of nearly $3,200 per month. They attempted to negotiate with defendant GMAC, but the best offer GMAC gave plaintiffs would have merely adjusted the interest rate so as to amout to a $170 reduction in monthly principal and interest payments. In October 2008, GMAC, through ETS Services LLC, transmitted a notice of default to plaintiffs, alleging plaintiffs had defaulted on the GreenPoint-funded mortgage. Thereafter, GMAC caused a notice of substitution of trustee to be recorded, replacing the original trustee, Marin Conveyancing Corp., with a new trustee, ETS Services LLC. In January 2009, GMAC, through ETS Services LLC, transmitted to plaintiffs a notice of an impending trustee sale of the trust property through non-judicial foreclosure. Id. ¶¶ 70-80.

Plaintiffs allege that defendants GreenPoint and Wachovia engaged in a number of illegal and improper activities, including: securitization of loans; deceptive sales and marketing of risky and defective loan products; provision of low-documentation/no-documentation loans; easing of underwriting standards; and risk layering. See id. ¶¶ 12-54.

III.     Procedural History

Plaintiffs filed their complaint in the Superior Court for the State of California, County of Contra Costa, on February 4, 2009. Defendants removed the action to federal court on April 8. Defendants GreenPoint, GMAC and Wachovia thereafter filed separate motions to dismiss the complaint. On July 31, while these motions were pending, plaintiff John Naulty filed motions for a preliminary injunction or temporary restraining order, to restrain defendants from conducting a trustee's sale of the trust property before resolution of the merits of this action. The court entertained oral argument on the motions on August 24, 2009.

3

LEGAL STANDARD

I.   Motion to Dismiss

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Since Rule 12(b)(6) is concerned with a claim's sufficiency rather than its substantive merits, when faced with a motion to dismiss, courts typically courts "look only at the face of the complaint." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

A court will grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff's complaint may be dismissed either for failing to articulate a cognizable legal theory or for not alleging sufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In Ashcroft v. Iqbal, ___U.S. ___, ___, 129 S.Ct. 1937, 1950 (2009), the U.S. Supreme Court held that a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

II.   Preliminary Injunction/Temporary Restraining Order

A preliminary injunction is a provisional remedy, the purpose of which is to preserve the status quo and to prevent irreparable loss of rights prior to final disposition of a litigation. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984); see Fed. R. Civ. P. 65(a). Preliminary injunctive relief is available to "a party who demonstrates either (1) a

4

combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips in its favor." Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000).  These are not separate tests but rather "opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 826 (9th Cir. 1997) (citation and internal quotation marks omitted).  A temporary restraining order is available only if an applicant for injunctive relief is faced with the possibility that irreparable injury will occur before the preliminary injunction hearing required by Rule 65(a) can take place.  Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2951; see Fed. R. Civ. P. 65(b).

DISCUSSION

I.    Preemption of State Law Claims Against Defendant Wachovia

Defendant Wachovia contends that the federal Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461 et seq., preempts each of plaintiffs' state law causes of action against Wachovia. Plaintiffs do not dispute that Wachovia is, and World Savings Bank was, a federal savings association regulated by the Office of Thrift Supervision (OTS) pursuant to HOLA.

Through the HOLA, Congress gave the OTS broad authority to issue regulations governing federal savings associations. 12 U.S.C. § 1464.  One such regulation provides: "OTS hereby occupies the entire field of lending regulation for federal savings associations. . . . [F]ederal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . ." 12 C.F.R § 560.2(a).  Paragraph (c) provides that state contract and commercial law, real property law and tort law, among others, are not preempted, "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [the regulation]." Id. § 560.2(c). The regulation also provides, in paragraph (b), an extensive list of the types of state laws that are

5

preempted. See id. § 560.2(b). Although it is generally presumed that Congress does not intend to preempt state law absent a clear manifestation of intent to the contrary, that presumption is not applicable to the field of lending regulation of federal savings associations. Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004 (9th Cir. 2008).

In this context, preemption is properly analyzed in three steps. A court must first determine whether the type of law in question is listed in paragraph (b). If so, it is preempted; if not, the court must ask whether the law affects lending. If not, there is no preemption; if so, the presumption arises that there is preemption. The presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). Id. at 1006, quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). "Any doubt should be resolved in favor of preemption." Id.

Plaintiffs cite California case law holding that certain causes of action such as fraud are not preempted. The rationale of these cases has appeal: "[T]he state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Banks [sic] chooses to operate, it do so free from fraud and other deceptive business practices." Gibson v. World Savings & Loan Ass'n, 103 Cal. App. 4th 1291, 1299 (2002), quoting Fenning v. Glenfed, Inc., 40 Cal. App. 4th 1285, 1299 (1995). Yet the Ninth Circuit made it clear in Silvas that the reach of the OTS regulations' field preemption is broad enough to encompass the sorts of claims at issue in this case.[2] In Silvas, the plaintiffs-appellants brought unfair advertising and unfair competition claims against a federal savings association pursuant to California Business and Professions Code sections 17500 and 17200, respectively. 514 F.3d at 1003. The court found that the OTS regulation occupied the field and dismissed both of the plaintiffs-appellants' claims. Id. at 1008. The court found the claims to be based upon the types of laws listed in paragraph (b) of section 560.2, specifically those listed at (b)(9) and (b)(5). Id. at 1006-1007. Those parts of the regulation involved "state laws purporting to impose requirements regarding" disclosure and advertising as well as loan-related fees. 12 C.F.R. § 560.2(b). Significantly, the Silvas court did not look merely to the abstract nature of the cause of action allegedly preempted but rather to the functional effect upon lending operations of maintaining the cause of action, as required by paragraph (b). The question was not whether a state law simply

6

set a minimum standard forbidding fraudulent and unfair practices, as suggested by cases like Gibson.³  The question was rather whether an application of a given state law to the activities of federal savings associations would "impose requirements" regarding the various activities broadly regulated by the OTS.

In the case at bar, plaintiffs have brought a series of state causes of action: negligence/ negligence per se; breach of contract; breach of fiduciary duty; intentional infliction of emotional distress; statutory and common law fraud; violations of state lending laws; violations of state deceptive advertising and unfair business practices laws; quiet title; and accounting.  Each of these causes of action is based upon allegations pertaining to Wachovia's lending operations.  Plaintiffs make allegations regarding the terms of credit that Wachovia provided to plaintiffs, disclosures that Wachovia did or did not give to plaintiffs, Wachovia's underwriting standards, and Wachovia's marketing and servicing of the loans.  Plaintiffs are attempting to leverage state laws to impose requirements on the way Wachovia manages its lending operations, including requirements regarding terms of credit, see id. § 560.2(b)(4), loan-related fees, see id. § 560.2(b)(5), disclosure and advertising, see id. § 560.2(b)(9), and processing, origination and sale of mortgages, see id. § 560.2(b)(10).  These activities are matters committed by Congress to regulation by a federal agency.  As such, each of plaintiff's state law causes of action against Wachovia is explicitly preempted under paragraph (b) of section 560.2.⁴

II.   Federal Claims Against All Defendants

   A.   Truth in Lending Act (TILA)

Plaintiffs allege that defendants' conduct violated the TILA, 15 U.S.C. §§ 1601 et seq. Defendants note that TILA claims for damages have a one-year statute of limitations period. 15 U.S.C. § 1640(e); see Silvas, 514 F.3d at 1007 n.3.  It is undisputed that the latest of the challenged transactions occurred in April 2006 and plaintiffs filed suit in February 2009.  Plaintiffs respond that all statute of limitations periods have been tolled due to defendants' fraud in concealing existence of a cause of action.  Indeed, a defendant's fraud in concealing a cause of action can provide a reason to toll the statute; whether there was such fraud and whether the plaintiff's reliance

1  on the defendant's fraudulent misrepresentations was reasonable are questions of fact. Grisham v.
2  Philip Morris U.S.A., Inc., 40 Cal.4th 623, 637 (Cal. 2007). A plaintiff cannot however prevail
3  simply by asserting that his claim cannot be dismissed because questions of fact are involved.
4  Plaintiffs neither allege facts in their complaint that would justify tolling nor explain in their
5  opposition how defendants concealed the existence of a cause of action. Plaintiffs' conclusory
6  argument for the appropriateness of tolling is unpersuasive.

7  Plaintiffs' claim for rescission is likewise time-barred. A consumer's right to rescind a loan
8  is absolute for three days after the loan is consummated. 15 U.S.C. § 1635(a). However, if the
9  lender fails to provide "material disclosures" at the closing of the loan, the three-day period can be
10 extended for up to three years. Id. § 1635(f); Davis v. Fed. Deposit Ins. Corp., 620 F.2d 489, 492
11 (5th Cir. 1980). Plaintiffs have insufficiently alleged what disclosures were material, alleging only
12 that defendants failed to "provide all of the statutorily mandated disclosures required by these laws."
13 Complaint ¶ 117. Such vague allegations do not meet the Rule 8 pleading standard, particularly in
14 light of Twombly and Iqbal. The complaint fails to state a claim under TILA.[5]

15        B.      Home Ownership and Equity Protection Act (HOEPA)

16 The complaint also alleges defendants violated the HOEPA, 15 U.S.C. § 1639. Defendants
17 note that the HOEPA is a section of the TILA and is subject to the same statute of limitations
18 problems discussed above. Defendants also point out that plaintiffs have not specifically alleged
19 that defendants failed to provide the disclosures required by the HOEPA. Plaintiffs fail to respond
20 to these arguments in their opposition, thus conceding them.

21        C.      Real Estate Settlement Procedures Act (RESPA)

22 Plaintiffs also invoke the RESPA, 12 U.S.C. §§ 2601 et seq. Plaintiffs apparently base their
23 RESPA claim on allegations that some of the defendants paid yield spread premiums and other
24 unlawful compensation to brokers and loan officers. Plaintiffs do not allege any particular basis for
25 finding the alleged use of yield spread percentages to be unlawful or improper. Defendants note that
26 yield spread percentages are not per se illegal. See Byars v. SCME Mortgage Bankers, Inc., 109
27 Cal. App. 4th 1134, 1149 (2003) ("We further note that YSPs [yield spread percentages] are

8

1 widespread and commonly used as a method to compensate mortgage brokers for services provided
2 to borrowers and the lender . . . ."). Plaintiffs fail to identify how any fees where excessive or
3 unlawful, who made the payments or received them, or when, where or why they were made. As
4 pled, the complaint does not state a claim under RESPA.

###     D.     Deceptive Practices Act

6 The complaint includes a federal unfair competition claim pursuant to the Deceptive
7 Practices Act, 15 U.S.C. section 45 et seq. That statute does not create a private right of action;
8 remedial power is vested in the Federal Trade Commission. Dreisbach v. Murphy, 658 F.2d 720,
9 730 (9th Cir. 1981). Defendants argued this point in their motions, and plaintiffs did not address the
10 issue in their opposition.

###     E.     Racketeer Influenced and Corrupt Organizations (RICO) Act

12 The complaint includes a claim under the RICO statute, 18 U.S.C. §§ 1961 et seq. Plaintiffs
13 pled quite specific details about business practices regarding securitization of mortgages, Payment
14 Option Adjustable Rate Mortgages, Home Equity Lines of Credit, underwriting standards, and other
15 issues that have recently become topics of concern on the national level. Plaintiffs also alleged, in a
16 more conclusory fashion, that several defendants engaged in these practices. The complaint does
17 not, however, enumerate the predicate acts upon which plaintiffs' RICO claim is based. See
18 18 U.S.C. § 1961(5) (two predicate acts necessary for "pattern of racketeering activity"). "When a
19 plaintiff alleges fraudulent acts as the predicate acts in his RICO claim, Fed. R. Civ. P. 9(b) 'requires
20 that circumstances constituting fraud be stated with particularity. . . . The plaintiff 'must state . . . the
21 specific content of the false representations.'" Pollack v. Katz, 1994 WL 616467, at *1 (9th Cir.
22 1994), quoting Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392-1393 (9th Cir.
23 1988). While the complaint recites a litany of unsavory practices engaged in by mortgage brokers
24 and alleges that defendants took part in such actions, it does not identify a single false representation
25 actually made to plaintiffs by any defendant. It is insufficient to simply allege that defendants have
26 engaged in various illicit practices without specifying any specific acts defendants actually

9

1  undertook. As regards the RICO claim, plaintiffs "have not nudged their claims across the line from
2  conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. As such, the claim is subject to dismissal.

II. <u>Remaining State Law Claims</u>

After dismissal of all federal claims, there remain against defendants other than Wachovia a number of state law claims pled in the complaint: negligence/negligence per se; breach of contract; breach of fiduciary duty; intentional infliction of emotional distress; statutory and common law fraud; violations of state lending laws; violations of state deceptive advertising and unfair business practices laws; quiet title; and accounting. Based on the parties' submissions, there is no basis for the exercise of federal diversity jurisdiction. The court declines to exercise supplemental jurisdiction over the state law claims at this stage of the litigation, now that the federal question claims have been dismissed. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Swett v. Schenk</u>, 792 F.2d 1447, 1450 (9th Cir. 1986) ("[I]t is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand it to the state court from which it was removed."); <u>Plute v. Roadway Package System, Inc.</u>, 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (Illston, J.) (court may remand *sua sponte* or on motion of a party). Indeed, counsel for plaintiffs embraced this approach at the hearing on the motion.

III. <u>Injunctive Relief</u>

Because this court does not exercise jurisdiction over the remaining claims, it does not exercise jurisdiction over the preliminary injunctive relief requested by plaintiffs.

<u>CONCLUSION</u>

Defendant Wachovia's motion to dismiss the state law claims against it on the basis of federal preemption is GRANTED. Plaintiffs' state law claims against Wachovia are accordingly DISMISSED with prejudice.

Defendants' motions to dismiss plaintiffs' federal law claims are GRANTED. These claims are DISMISSED as to all defendants without prejudice to plaintiffs' state law claims. The court

10

does not reach the merits of plaintiffs' remaining state law claims, and this action is REMANDED to the Superior Court of Contra Costa County.

As the court declines to exercise jurisdiction over the state law claims, plaintiffs' motion for preliminary injunctive relief is DENIED.

The Clerk of Court shall transmit forthwith a certified copy of this order to the Clerk of the Superior Court of Contra Costa County. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: September 2, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Wachovia acquired World Savings Bank, the entity which allegedly approached Naulty. <u>See</u> Complaint ¶ 2.

2. The <u>Gibson</u> court began its analysis with the "strong presumption" that section 560.2 did not preempt the claims brought in that action. <u>Gibson</u>, 103 Cal. App. 4th at 1300. As noted, the <u>Silvas</u> court rejected this general presumption against preemption in the context of regulation of federal savings associations.

3. Indeed, such a practice would allow states to enmesh themselves into questions of what precisely constitutes unfair practices, a subject that would inevitably encroach upon federal regulation of the field.

4. Consistent with the analytical framework set forth in <u>Silvas</u>, <u>see</u> 514 F.3d at 1005, the court does not reach the question of whether the state laws in question "only incidentally affect the lending operations of Federal savings associations." If the court did reach this issue, it would likely find the effect to be more than incidental. Plaintiffs are challenging activities that go to the core of Wachovia's lending practices.

5. The court does not reach defendants' argument that plaintiffs must allege they have tendered, or are willing to tender, the rescission balance in order to rescind under TILA.